## THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FOREST RESOURCE COUNCIL, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>TRACY STONE-MANNING, Director of the Bureau of Land Management, and DEBRA A. HAALAND, Secretary of the Interior,<br><br>Defendants. | Case No.: 1:16-cv-01599-RJL<br><br><br><br>DEFENDANTS' STATUS REPORT SHOWING GOOD CAUSE TO EXTEND DEADLINE |

### I.        INTRODUCTION

On November 19, 2021, the Court issued a single remedy order (Remedy Order) in three non-consolidated cases requiring, among other things, that the U.S. Bureau of Land Management (BLM) submit a status report no later than 120 days from the date of the Remedy Order "confirming that all consultations under Section 7(a)(2) of the [Endangered Species Act (ESA)] necessary to revise the 2016 [resource management plans (RMPs)] have been completed."  ECF No. 72 at 13-14.  The 120-day deadline is March 21, 2022.  The Remedy Order, however, provided for an extension of that deadline: "If extraordinary circumstances prevent the Government from completing these tasks in a timely manner, it must, prior to the deadline, provide a detailed description of those circumstances and demonstrate good cause for an extension."  *Id.* at 12.

Defendants noticed appeals in all three cases on January 18, 2022.  Defendants now submit this status report to demonstrate good cause to extend the deadline for completing all

ESA consultations necessary to revise the 2016 RMPs.[1]  As detailed in the declarations from

BLM, the U.S. Fish and Wildlife Service (FWS), and the National Marine Fisheries Service

(NMFS), good cause exists to extend that deadline because concluding all ESA Section 7

consultations for an amendment or revision to the 2016 RMPs in 120 days is not possible.  *See*

Decl. of Barry R. Bushue (Bushue Decl.) ¶¶ 8, 10; Decl. of Paul Henson, Ph.D. (Henson Decl.)

¶ 10; Decl. of Kim Kratz, Ph.D. (Kratz Decl.) ¶ 7.  Instead, the consultation process runs parallel

to the RMP revision or amendment process under the Federal Land Policy and Management Act

(FLPMA), the National Environmental Policy Act (NEPA), and their implementing regulations.

As a result, Defendants request that rather than requiring all ESA consultations necessary to

revise or amend the 2016 RMPs be complete by a date certain, the Court provide that the

biannual status reports "explaining the progress made in revising the 2016 RMPs" due beginning

on November 21, 2022, also detail the progress made in consulting under Section 7 of the ESA.

Remedy Order at 14.

## II.   GOOD CAUSE EXISTS TO EXTEND THE ESA CONSULTATION DEADLINE TO RUN CONCURRENTLY WITH THE PROCESS FOR AMENDING OR REVISING THE 2016 RMPs

FLPMA and its implementing regulations guide the process for revising or amending

resource management plans (RMPs).  *See* 43 U.S.C. § 1712; 43 C.F.R. pt. 1600.  NEPA and its

implementing regulations guide the process for considering the potential environmental impacts

of major federal actions.  42 U.S.C. § 4321 et seq.; 40 C.F.R. pt. 1501.  The ESA and its

implementing regulations guide the process for ensuring federal actions do not jeopardize species

listed under the ESA or destroy or adversely modify their critical habitat.  16 U.S.C. § 1531 et

---

[1] Defendants intend to file a status report on March 21, 2022, "detailing what, if any, aspects of
the Wildlife Provisions [in the 2016 RMPs] remain permissible in light of the O&C Act and this
Court's Memorandum Opinions."  Remedy Order at 14.

seq.; 50 C.F.R. pt. 402.  As discussed below, the processes for compliance with these three

statutes, by necessity, run concurrently.

Specifically, Section 7(a)(2) of the ESA requires a federal agency to consult with FWS

and NMFS to "insure that any action authorized, funded, or carried out by such agency is not

likely to jeopardize the continued existence of any endangered species or threatened species or

result in the adverse modification [of designated critical habitat]."  16 U.S.C. § 1536(a)(2).  In

the case of BLM land use planning, the "action" carried out by BLM is the adoption of a RMP

revision or amendment.  To complete consultation on such a revision or amendment, BLM must

identify the specific action it intends to take, allowing the consulting agencies (i.e., FWS and

NMFS) to evaluate the effects of that action on listed species and designated critical habitat.

BLM's land use planning regulations require BLM to complete certain steps before it

identifies its planning action.  The regulations require that the public "be provided opportunities

to meaningfully participate in and comment on" revisions or amendments to RMPs.  43 C.F.R.

§ 1610.2(a).  This public involvement "shall conform to the requirements of [NEPA]."  *Id.*  In

addition, BLM must coordinate "with other Federal agencies, state and local governments, and

federally recognized Indian tribes," and invite them "to participate as cooperating agencies" for

any resource management plan revisions or amendments in which an environmental impact

statement (EIS) under NEPA is being prepared.  *Id.* § 1610.3-1(a), (b); *see also* 40 C.F.R.

§ 1501.8 (cooperating agencies under NEPA).

BLM initiates the plan amendment or revision process by publishing a notice in the

Federal Register that "may also constitute the scoping notice" under NEPA's implementing

regulations.  43 C.F.R. § 1610.2(c); *see also* 40 C.F.R. § 1501.9 (NEPA scoping).  As part of this

scoping process, BLM must provide an opportunity for the public, other federal agencies, state

and local governments, and Indian tribes to help BLM identify the issues to be addressed during the planning process.  43 C.F.R. § 1610.4-1.  BLM then develops planning criteria, arranges for relevant data collection, and completes an extensive analysis of the management situation that serves as the basis for developing reasonable planning alternatives.  *Id.* § 1610.4-2, -4, -5; *see* Bushue Decl. ¶¶ 6-8.

After developing a range of reasonable planning alternatives, BLM, "in collaboration with any cooperating agencies, will evaluate the alternatives, estimate their effects according to the planning criteria, and identify a preferred alternative . . . ."  43 C.F.R. § 1610.4-7.  This results in the preparation and publication of a draft plan amendment or revision along with a draft EIS or environmental assessment (EA) under NEPA, both of which "shall be provided for comment to the Governor of the State involved, and to officials of other Federal agencies, State and local governments and Indian tribes that [BLM] has reason to believe would be concerned."  *Id.*; *see also* 40 C.F.R. § 1502.9 (NEPA regulations requiring draft EIS).  BLM must also publish a Federal Register notice announcing the availability of the draft plan amendment or revision and EA or EIS, "and provide a minimum 30- to 90-day public comment period, depending on whether [the agency] has prepared an EA or an EIS."  Bushue Decl. ¶ 8 (citing 43 C.F.R. § 1610.2(e)).  In doing all of this, NEPA's implementing regulations provide that the process to develop a draft EIS, "[t]o the extent possible," be done "concurrent[ly] and integrated with environmental impact analyses and related surveys and studies required by all other Federal environmental review laws and Executive orders applicable to the proposed action, including . . . the [ESA]."  40 C.F.R. § 1502.24.

In consideration of "BLM's analysis of the draft plan amendment or revision and public, agency, and tribal comments, BLM develops a proposed plan amendment or revision."  Bushue

Decl. ¶ 8.  For complex actions, the process of developing the proposed action often involves close coordination with the FWS and NMFS.  Henson Decl. ¶ 3; Kratz Decl. ¶¶ 3, 5.  It is important that BLM develop the proposed action through these planning processes under FLPMA and NEPA before consulting under Section 7 of the ESA.  Bushue Decl. ¶ 9.  As explained in the Bushue Declaration:

> If BLM and the consulting agencies were to complete Section 7 consultation earlier in the land use planning process, then BLM would either have to commit to not changing the draft proposed action during the FLPMA and NEPA processes, which is contrary to the public-participation driven purposes of engaging in those processes, or BLM would risk having to restart the Section 7 consultation process if the proposed action changed, which would delay completion of a plan revision or amendment.

*Id.*

Once BLM has a proposed RMP amendment or revision, it can begin the consultation process under Section 7 of the ESA with FWS and NMFS.  *See id.* ¶ 7; Henson Decl. ¶ 2; Kratz Decl. ¶ 3.  The Section 7(a)(2) consultation process typically begins with BLM "requesting a list of species that may be present in the action area" from FWS and NMFS.  Henson Decl. ¶ 3 (citing 50 C.F.R. § 402.12(c)).  For major federal actions, upon receiving the list of species, BLM then prepares a biological assessment (BA) to evaluate the potential effects of its proposed action on listed species and their designated critical habitat.  Henson Decl. ¶ 3; Kratz Decl. ¶ 3; *see* 50 C.F.R. § 402.12(a).  The BA is to be completed "within 180 days after its initiation (receipt of or concurrence with the species list) unless a different period of time is agreed to by the" action and consulting agencies.  50 C.F.R. § 402.12(i); Henson Decl. ¶ 3; Kratz Decl. ¶ 3. In practice, preparation of BAs for complex proposed actions, such as land use plan amendments or revisions, "can take years and timing is often determined by the pace of other environmental reviews such as those carried out under [NEPA]."  Kratz Decl. ¶ 3; *see also* Henson Decl. ¶ 3 (noting coordination with consulting agency before submission of BA to discuss the proposed

action and "identify issues that need to be addressed during the consultation but prior to submittal of a BA."); Bushue Decl. ¶ 10 (noting "consultations addressing proposed Federal actions that address a large action area or a large number of species, or both, such as the case with the RMPs, typically must be extended over multiple years in order to meet statutory and regulatory standards.").

If BLM's BA determines that a proposed action is likely to adversely affect a listed species or adversely modify designated critical habitat, BLM must formally consult with FWS and NMFS.[2]  *See* 50 C.F.R. § 402.14.  This consultation process requires a minimum of 135 days, comprising 90 days for BLM to consult with FWS and NMFS, and 45 days for FWS and NMFS to prepare a biological opinion (BiOp).  Bushue Decl. ¶ 10; Henson Decl. ¶ 5; Kratz Decl. ¶ 4.  Therefore, regulations contemplate a typical consultation process requiring "up to 315 days (180 days for the Federal action agency to complete the BA; 90 days for the Service to conduct its evaluation; and 45 days for the Service to prepare and issue its BiOp)" from the time the action agency initiates the process following development of a proposed action and submission of a consultation initiation package to FWS or NMFS.  Henson Decl. ¶ 6.

But preparation of a BiOp for complex actions, such as plan amendments or revisions, regularly exceed 315 days and can require a matter of years to complete.  Kratz Decl. ¶ 4; *see also* Henson Decl. ¶ 7.  Indeed, past experience with revisions of BLM's RMPs for western Oregon illustrate the complexity of the consultation process and have taken years to complete. Henson Decl. ¶ 8; Kratz Decl. ¶ 6.  As explained in the Henson Declaration:

> The revision of the BLM's resource management plans (RMPs) in 2016 for western Oregon involved one such complex consultation.  The RMPs provide management direction of 2.5 million acres of BLM-administered lands over a 50-year period.

---

[2] If BLM's BA determines that an action is not likely to adversely affect a listed species, then BLM will engage in informal consultation with NMFS and FWS.  *See* 50 C.F.R. § 402.13.

The RMPs include multiple land-use allocations that have different management approaches and cover 20 different resource programs, including forest management, wildfire risk reduction and response, livestock grazing, road management, recreation, and other programs. The ESA section 7(a)(2) consultation involved the description and evaluation of the effects of the multiple management approaches on 17 ESA-listed species and 9 ESA-designated critical habitats. The consultation was a multi-agency effort including staff from the BLM, FWS, National Marine Fisheries Service, U.S. Forest Service, and the Environmental Protection Agency. Due to the complex nature of the consultation, BLM, FWS, and National Marine Fisheries Service established a formal consultation agreement in 2013 to coordinate the process and identify roles and responsibilities of each agency and the six technical teams and advisory groups formed to conduct the analyses. Five FWS staff members participated in a multi-year process of developing the draft BA *prior* to the BLM's submittal of a BA to the Service. Upon receipt of the BA, the Service devoted twelve staff members to developing the subsequent BiOp. The collaborative development of the BA and BiOp included complex modeling and analyses from internal and external experts to inform the effects to listed species and their critical habitats. In addition, the review process for the resulting documents was extensive and included reviews at multiple levels, including staff, managers, attorneys, and executive leadership from each involved agency. All told, the process from development of the BA through to the issuance of the BiOp took over four years.

Henson Decl. ¶ 8.

In short, completion of all Section 7 consultations necessary to revise or amend the 2016 RMPs within 120 days is not possible. Instead, the consultation process under the ESA occurs concurrently with the RMP revision or amendment process under FLPMA and NEPA, and commences once BLM develops a proposed planning action and submits an initiation package to the consulting agencies. Historically, due to the complexity of managing BLM's lands in western Oregon, it has taken years from the commencement of the planning process under FLPMA and NEPA until a proposed action is ready for Section 7 consultation under the ESA. Once that occurs, the relevant regulations provide a period of 315 days for the action agency to prepare the BA, for the action agency and consulting agencies to formally consult, and for the consulting agencies to prepare a BiOp. But complex consultations, such as those involving an amendment or revision of the 2016 RMPs, typically require substantially longer than 315 days to

complete.

Because it is not possible for BLM, FWS, and NMFS to complete all consultations required to revise or amend the 2016 RMPs within 120 days of the Remedy Order, Defendants have established good cause to extend that deadline.  Moreover, Defendants request that instead of requiring that all consultations necessary to revise or amend the 2016 RMPs be completed by a date certain, they instead include updates on the consultation process in the biannual status reports due beginning on November 21, 2022.  This approach would be consistent with the parallel processes required by FLPMA, NEPA, and the ESA to amend or revise the 2016 RMPs.

Respectfully submitted on this 8th day of March, 2022.

TODD KIM
U.S. Department of Justice
Assistant Attorney General
Environment and Natural Resources Division

*/s/ Shaun M. Pettigrew*
SHAUN M. PETTIGREW
Senior Attorney
Natural Resources Section
c/o NOAA, Damage Assessment
7600 Sand Point Way, NE
Seattle, WA 98115
Phone: (206) 526-6881
shaun.pettigrew@usdoj.gov

*Counsel for Defendants*

8

**CERTIFICATE OF SERVICE**

I hereby certify that on this 8th day of March, 2022, a copy of this foregoing document was filed electronically through the CM/ECF system, which caused all parties or counsel to be served by electronic means as reflected on the Notice of Electronic Filing.

*/s/ Shaun M. Pettigrew*
Shaun M. Pettigrew