UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| **AMERICAN FOREST RESOURCE COUNCIL**, et al.,<br><br>Plaintiffs,<br><br>v.<br><br>**TRACY STONE-MANNING**, Deputy Director, Operations of the Bureau of Land Management, and **DEBRA HAALAND**, Secretary of the Interior,<br><br>Defendants. | Civil Case No. 1:16-cv-01599-RJL<br><br>PLAINTIFFS' RESPONSE TO FEDERAL DEFENDANTS' STATUS REPORT |

Plaintiffs the American Forest Resource Council et al. (AFRC) raise the following objections to the federal defendants' (BLM) March 21, 2022 Status Report (Wildlife Provisions Status Report, ECF No. 76):

### INTRODUCTION

On November 19, 2021, the Court issued a remedy order in this case after having concluded that BLM violated the Oregon and California Railroad and Coos Bay Wagon Road Grant Lands Act (O&C Act), 43 U.S.C. § 2601 et seq., by "unlawfully reduc[ing] the amount of timber available for harvest from O&C land." Remedy Order (ECF No. 72) at 2.[1] BLM violated

---

[1] The Court's Remedy Order applied to three cases before the Court involving the O&C Act, including *Swanson Group Manufacturing, LLC v. Haaland*, Civil Case No. 1:15-cv-01419-RJL.

Page 1 – PLAINTIFFS' RESPONSE TO FEDERAL DEFENDANTS' STATUS REPORT

the O&C Act by failing to comply with the statute's mandatory directives that O&C Act timberlands "'*shall* be managed . . . for permanent forest production, and the timber thereon *shall* be sold, cut and removed in conformity with the princip[le] of sustained yield.'"  Merits Opinion (ECF No. 55) at 9 (quoting O&C Act, alterations in original).

In fashioning its remedy, the Court recognized that certain wildlife provisions in BLM's illegal 2016 Resource Management Plans (RMP) imposed "conservation-based requirements that, admittedly, may restrict the harvest of timber and the fulfillment of statutory obligations under the O&C Act."  Remedy Order at 8-9 (referring to the wildlife provisions found at pages 95-102 of the Northwestern and Coastal Oregon RMP (NCO RMP) and at pages 115-21 of the Southwestern Oregon RMP (SWO RMP)).[2]  Deeming it appropriate for BLM to address the issue "in the first instance," the Court directed BLM to "consider carefully what, if any, of the Wildlife Provisions remain permissible and appropriate in light of [federal defendants'] obligations under the O&C Act," *id.* at 9, and to then report back to the Court by way of a status report detailing the agency's conclusions.  *Id.* at 14.

## RESPONSE

BLM's report to the Court is underwhelming.  BLM read the Court's prior Merits Opinion

---

This response to federal defendants' status report is being filed in substantially similar form in that related case as well.

[2]  The referenced wildlife provisions of the NCO RMP and SWO RMP are found in the Joint Appendix on file at ECF No. 37 (NCO RMP wildlife provisions, JA-1 at 105-12; SWO RMP wildlife provisions, JA-2 at 125-31).

Page 2 – PLAINTIFFS' RESPONSE TO FEDERAL DEFENDANTS' STATUS REPORT

overly narrowly by concluding that the wildlife provisions were permissible and appropriate so long as they did not have the potential to trigger a reallocation of O&C Act lands from the Harvest Land Base to the Late-Successional Reserve land use allocation.  Wildlife Provisions Status Report at 2.  Viewing the issue in that myopic light, BLM concluded rather remarkably that out of the dozens of restrictive wildlife provisions in the two RMPs, only two are problematic, namely a red tree vole provision in the NCO RMP and marbled murrelet direction found in both RMPs.  Declaration of Barry R. Bushue (Bushue Decl., ECF No. 76-1) ¶¶ 5, 6.  None of the other wildlife provisions were problematic in BLM's misguided estimation because they did not "result in a similar re-allocation of lands to the Late-Successional Reserve."  Wildlife Provisions Status Report at 2.

The Court's holding regarding the RMPs' legal infirmity under the O&C Act is not so narrow.  In discussing the interplay between the ESA and the O&C Act, the Court observed that ESA Section 7(a)(2) "does not alter *mandatory* duties imposed on agencies by statute."  Merits Opinion at 12 (emphasis in original).  Quoting the Supreme Court's *Home Builders* decision, the Court emphasized that ESA Section 7(a)(2) "'covers only discretionary agency actions and does not attach to actions . . . that an agency is *required* by statute to undertake once certain specified triggering events have occurred.'"  Merits Opinion at 12 (quoting *Nat'l Ass'n of Home Builders v. Defenders of Wildlife*, 551 U.S. 644, 664 (2007)) (emphasis and alteration in original).  The Court then stated in no uncertain terms that the "O&C Act's timber harvest mandates fall into the latter category: once O&C land is classified as timberland, BLM is required to harvest the timberland

Page 3 – PLAINTIFFS' RESPONSE TO FEDERAL DEFENDANTS' STATUS REPORT

pursuant to sustained yield principles." Merits Opinion at 12-13. AFRC believes that holding extends beyond the ESA and is applicable in the context of other environmental and natural resource statutes, including the Migratory Bird Treaty Act and the Bald and Golden Eagle Protection Act. *See* Remedy Order at 8-9 (mentioning same but pointing out that the Court did not address such statutes on the merits).

The Court's merits holding cannot be squared with BLM's conclusion that the RMPs' wildlife provisions pass legal muster so long as they do not place a Late-Successional Reserve overlay on O&C Act timberlands previously included in the Harvest Land Base. By misreading the Court's merits holding, BLM failed to answer the question posed by the Court regarding the legal validity of the wildlife provisions. Consider, for example, the following problematic wildlife provisions about which BLM said nothing:

- **BLM's overly restrictive "no take" wildlife provision for the northern spotted owl**: The RMPs adopted an ESA "no take" policy that prohibits the incidental take of spotted owls from any timber harvest, including on O&C Act timberlands, "until implementation of a barred owl management program" at some unknown future date. NCO RMP at 100; SWO RMP at 121. The "no take" policy represented a significant departure from prior policy that continues to be implemented today, thereby allowing the ESA to trump the mandatory directives of the O&C Act for sustained yield harvest on O&C Act timberlands contrary to the Court's Merits Opinion;

- **BLM's overly restrictive wildlife provisions for the fisher**: The RMPs adopted a variety of land management requirements that interfere with timber harvest on O&C Act timberlands, including a prohibition on "actions that would disrupt normal fisher behaviors . . . associated with known natal or maternal denning sites, except when done in accordance with an approved recovery plan, conservation agreement, species management plan, survey and monitoring protocol, or critical habitat rule, and when the action is necessary for the conservation of the species." NCO RMP at 97; SWO RMP at 117. The RMPs thereby allow BLM's policies regarding Bureau Sensitive Species

Page 4 – PLAINTIFFS' RESPONSE TO FEDERAL DEFENDANTS' STATUS REPORT

(the fisher is not an ESA-listed species within the range of the RMPs) to trump the mandatory directives of the O&C Act for sustained yield harvest on O&C Act timberlands contrary to the Court's Merits Opinion; and

- **BLM's overly restrictive wildlife provisions for the marbled murrelet**: The RMPs adopted various land management requirements that interfere with timber harvest on O&C Act timberlands, including restrictions on modifying nesting habitat or removing nesting structure in all land use allocations within 35 miles of the Pacific Coast under certain conditions. NCO RMP at 98-100; SWO RMP at 119-21. The RMPs thereby allow the ESA to trump the mandatory directives of the O&C Act for sustained yield harvest on O&C Act timberlands contrary to the Court's Merits Opinion.

The foregoing are illustrative only as it is BLM that was ordered to, but did not, answer the Court's question regarding the legality of the RMPs' wildlife provisions under the O&C Act. The second declaration of AFRC's Federal Timber Program Director Andy Geissler accompanying this filing further discusses BLM's failure to respond to the Court's wildlife provisions question.

## SPECIFIC REQUESTS FOR ADDITIONAL RELIEF

The Court should require more of BLM. This is particularly true given BLM's March 8, 2022 Status Report (ECF No. 75), which showed that despite the Court having found BLM in violation of the O&C Act, and despite the Court having ordered BLM to promulgate lawful RMPs, BLM is conducting *business as usual* with no apparent sense of urgency. BLM's conduct to date appears to ignore the Court's admonition that it expects to see "substantial progress towards the revision of the 2016 RMPs to have been accomplished" by November 19, 2022, less than seven months from now. Remedy Order at 12, 14.

To illustrate, despite the Court having ordered BLM to *revise* the RMPs, Remedy Order at 13, BLM reported that it has not yet decided whether it will revise or amend the illegal RMPs,

Page 5 – PLAINTIFFS' RESPONSE TO FEDERAL DEFENDANTS' STATUS REPORT

offering the Court no deadline by which such threshold determination might be made. Declaration of Barry R. Bushue (Bushue Decl., ECF No. 75-1) ¶¶ 5-6. *See also id.* ¶ 8 (stating that BLM has not yet finished "developing a planning team of specialists to work on the planning effort" nor "determined the extent of any [necessary] planning process"). In a similar vein, the consulting agencies informed the Court that they are very busy with ESA consultations unrelated to the RMP revisions and likely will be so for the foreseeable future. *See, e.g.*, Declaration of Paul Henson (Hensen Decl., ECF No. 75-2) ¶¶ 12-13; Declaration of Kim Kratz (ECF No. 75-3) ¶¶ 8-10. *See also* Hensen Decl. ¶¶ 8, 10-12 (observing that the ESA consultation process on the 2016 RMPs took four years, suggesting that the current process will be comparable, and noting that the ESA consultation process will not even commence until BLM completes substantial work on the planning process).

On the facts of this case, business as usual is untenable. *See* Remedy Order at 7 (stating that BLM's failure to comply with the O&C Act's mandatory directives "over a period of many years . . . deprive[d] plaintiffs of the lion's share of a Congressionally mandated benefit"). AFRC therefore asks the Court to order BLM to provide the Court with a further status report on the two points listed below no later than July 21, 2022:[3]

(1) answer the question previously posed by the Court, namely what, if any, of the Wildlife

---

[3] This date coincides with that in the Court's March 11, 2022 Minute Order, which requires BLM to "submit a report detailing the status of the Section 7(a)(2) consultations necessary to revise the 2016 RMPs no later than July 21, 2022," and periodically thereafter.

Page 6 – PLAINTIFFS' RESPONSE TO FEDERAL DEFENDANTS' STATUS REPORT

Provisions remain permissible and appropriate in light of BLM's mandatory obligations under the O&C Act, *i.e.*, that O&C Act timberlands "'*shall* be managed . . . for permanent forest production, and the timber thereon *shall* be sold, cut and removed in conformity with the princip[le] of sustained yield,'" Merits Opinion at 9 (quoting O&C Act, alterations in original), irrespective of any particular land use allocation overlay; and

(2) inform the Court of a reasonable deadline by which BLM will have completed the requisite steps in the planning process and made a final decision to revise rather than amend the RMPs.

      Respectfully submitted this 4th day of May, 2022.

      /s/ Julie A. Weis
      Julie A. Weis, D.C. Bar No. OR0021
      Haglund Kelley LLP
      2177 SW Broadway
      Portland, OR 97201
      Phone: (503) 225-0777
      Fax: (503) 225-1257
      Email: weis@hk-law.com

      /s/ Caroline M. Lobdell
      Caroline M. Lobdell, D.C. Bar No. 1028428
      Western Resources Legal Center
      9220 SW Barbur Boulevard
      Suite 119-327
      Portland, OR 97219
      Phone: (503) 768-8500
      Fax: (503) 222-3255
      Email: clobdell@wrlegal.org

      Attorneys for Plaintiffs

Page 7 – PLAINTIFFS' RESPONSE TO FEDERAL DEFENDANTS' STATUS REPORT