THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| AMERICAN FOREST RESOURCE COUNCIL, *et al.*,<br><br>Plaintiffs,<br><br>v.<br><br>TRACY STONE-MANNING, Director of the Bureau of Land Management, and DEBRA A. HAALAND, Secretary of the Interior,<br><br>Defendants. | Case No.: 1:16-cv-01599-RJL<br><br>DECLARATION OF BARRY R. BUSHUE |

I, Barry R. Bushue, in accordance with 28 U.S.C. § 1746, declare under penalty of perjury:

1. I am the U.S. Bureau of Land Management ("BLM") State Director for Oregon and Washington ("OR/WA"). I have served as the State Director since June 2020. Prior to that I was the State Executive Director for the Oregon Farm Service Agency for the U.S. Department of Agriculture beginning in October 2018. Prior to that, I was the President of the Oregon Farm Bureau Federation, an organization with approximately 8,000 farmer members and over 50,000 supporting members, for nineteen years as well as the Vice President of the American Farm Bureau Federation for eight years. I hold a Bachelor of Science degree in Biology from Oregon State University granted in 1972.

2. As the State Director for BLM OR/WA, I establish priorities for the OR/WA annual program of work, including forestry activities and implementation of the 2016 Resource Management Plans ("RMPs") for western Oregon, which include the Southwestern

Oregon ("SWO") RMP and Northwestern and Coastal Oregon ("NCO") RMP. I also have line officer supervisory authority over all BLM OR/WA staff.

4. I am knowledgeable about the Plaintiffs' challenge in these cases and understand that the Court issued its Order granting in part Plaintiffs' requested relief on November 19, 2021. I am also familiar with the Court's Memorandum Opinions issued in these cases on September 30, 2019, and November 22, 2019. I understand that on March 8, 2022, the Court ordered BLM to "submit a status report detailing the status of the Section 7(a)(2) consultations necessary to revise the 2016 RMPs." The following explains that status.

4. Consultation under the Endangered Species Act ("ESA") requires a complete proposed action that the regulatory agency can evaluate under the ESA. BLM must develop the proposed action through the Federal Land Policy and Management Act ("FLPMA") planning process. Although BLM has not initiated formal consultation under section 7 of the ESA for an amended RMP for Western Oregon because BLM has not yet developed a proposed land use planning action through its planning process on which to consult, the preparation necessary to begin Section 7 consultation is well underway.

5. BLM has determined that it will engage in a RMP amendment process under 43 C.F.R. § 1610.5-5, rather than the broader RMP revision process under 43 C.F.R. § 1610.5-6, as the appropriate mechanism to address the Court's orders and other planning needs. The BLM has conducted internal scoping, consistent with 40 C.F.R. § 1501.9(a) and 40 C.F.R. § 1502.4(a), to further develop the proposal for action and to identify any additional proposed changes to the RMPs that go beyond those that address the Court's orders.

6. Based on this internal assessment, the BLM has developed a staffing plan for the interdisciplinary team and is in the process of implementing the required personnel actions. In particular, BLM has identified the staffing needed for the planning effort, including the National Environmental Policy Act ("NEPA") and ESA leads, and has begun the hiring process to fully staff the interdisciplinary team.

7. The interdisciplinary team provides the technical subject-matter expertise necessary to prepare the required planning documents, such as the environmental impact statement under NEPA and the biological assessment under the ESA. Besides the Project Manager and Team Lead, the staffing plan for the interdisciplinary team will include approximately 21 additional staff with the following expertise: Vegetation Modeling; Geographic Information Systems; Forest Management; Forest Management Support; Wildlife (Threatened & Endangered species); Wildlife (non-Threatened & Endangered species); Hydrology, Soils, and Air Quality; Recreation and Visual Resources; Fire and Fuels; Greenhouse Gas Emissions and Carbon; Areas of Critical Environmental Concern, Botany, and Invasive Plants; Project/Administrative Records Manager; Communications; Cultural Resources; Tribal Liaison; Socioeconomics and Environmental Justice; Fisheries; Lands and Realty; Roads; Livestock Grazing and Wild Horses; Minerals; and Wilderness and Wild and Scenic Rivers. Filling these positions is a high priority, but remains subject to staffing and other Human Resources constraints.

8. BLM, NOAA Fisheries, and the U.S. Fish & Wildlife Service ("FWS") have also had preliminary conversations about a consultation agreement for the planning effort. Such an agreement would establish a cooperative process leading up to consultation by outlining the consulting agencies' respective responsibilities and

commitments for consultation on BLM's proposed planning action. Establishing this pre-consultation relationship between the agencies will make the consultation process more efficient.

9. This approach under FLPMA, NEPA, and the ESA is consistent with the approach used for the 2016 RMPs. Under that approach, as BLM developed its proposed action through the FLPMA planning process and NEPA environmental review process, BLM coordinated those processes with FWS and NOAA Fisheries to also engage in programmatic ESA Section 7(a)(2) consultation. To complete these processes in the proper order, BLM first spent several years preparing proposed RMPs and analyzing the potential environmental effects of those proposed RMPs under FLPMA and NEPA, as well as coordinating closely with FWS and NOAA Fisheries pursuant to section 7(a)(1) and the informal consultation regulations (50 C.F.R.§ 402.13) of the ESA before actually commencing formal Section 7 consultation. BLM issued the proposed RMPs and final environmental impact statement in April 2016. Because of the extensive coordination with the consulting agencies leading up to this point, the agencies then were able to complete Section 7 consultation on that proposed action, culminating in the receipt of biological opinions signed by the respective consulting agencies in July 2016.

I certify under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Executed on this _____ day of July, 2022, in Portland, Oregon.

_____
Barry R. Bushue